**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JERRICK ALLISON,**

                              **Plaintiff,**

        **vs.**                                                  **9:10-CV-00304**
                                                                 **(MAD)**

**DR. WEISSMAN, Facility Healthcare Director,**
**Upstate Correctional Facility; DR. GOULDING,**
**Facility Doctor, Mid-Orange Correctional Facility;**
**LESTER WRIGHT, MD, Deputy Commissioner/Chief**
**Medical Officer, Department of Correctional**
**Services,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

JERRICK ALLISON
07-A-4122
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411
_Plaintiff Pro Se_

ERIC T. SCHNEIDERMAN                    Adam W. Silverman, Esq.
Attorney General for the State of New York
The Capitol
Albany, New York 12224-0341
_Attorney for Defendants_

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        In this _pro se_ civil rights action under 42 U.S.C. § 1983, plaintiff claims that defendants

violated his Eighth Amendment rights as they were deliberately indifferent to his serious medical

needs.  Defendants move for summary judgment and dismissal of plaintiff's complaint pursuant

to Fed. R. Civ. P. 56. (Dkt. No.39).  Plaintiff has opposed the motion. (Dkt. No. 42).

## BACKGROUND

The facts in this case, unless otherwise noted, are undisputed.[1]  Plaintiff is an inmate of the New York State Department of Corrections and Community Involvement ("DOCCS"). Currently, plaintiff resides at Orleans Correctional Facility.  Defendant Evelyn Weissman, M.D. ("Weissman") is a physician and former health services director for Upstate Correctional Facility ("Upstate").  Defendant Herbert Goulding, M.D. ("Goulding") is a physician and health service director for Mid-Orange Correctional Facility ("Mid-Orange").  Defendant Lester Wright ("Wright") is a physician and former Chief Medical Officer for DOCCS.

On or about July 30, 2007, plaintiff was received by DOCCS at the Downstate Correctional Facility ("Downstate").  During his reception, pursuant to State policy, all of plaintiff's personal belongings, including his orthotic shoes, were removed by DOCCS personnel.[2]  Shortly thereafter, plaintiff complained of pain caused by walking without his shoes. Three days later, plaintiff's orthotic shoes were returned to him and he was provided Tylenol 3 pain medication.  Plaintiff took the medication for two weeks, until his transfer to Upstate in August 2007.

---

[1] The facts set forth in this section are taken from: (1) the Complaint; (2) the Answer; (3) Defendants' Statement of Material Facts; (4) the exhibits and evidence submitted by Defendants in support of their Motion for Summary Judgment; and (5) plaintiff's deposition transcript.

In support of the motion, defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1. Local Rule 7.1(a)(3) requires that the nonmoving party file a response to the moving party's Statement of Material Facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. *Jamison v. Metz*, 2011 WL 4345297, at *13 , n.6 (N.D.N.Y. 2011) (citing N.D.N.Y. L.R. 7.1(a)(3)). Here, plaintiff has failed to respond to defendants' statement. Therefore, to the extent that defendants' statements are supported by the record, the Court will deem defendants' facts admitted by plaintiff.  *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

[2] Due to an injury, twenty years ago, plaintiff required the use of an orthotic shoe with a lifted heel.

Upon arrival at Upstate, plaintiff requested Tylenol 3 for intermittent pain and was offered NSAIDs, which he refused.[3]  While at Upstate, plaintiff was assigned to cadre duty and was paid to work different jobs around the prison.  Plaintiff alleges that in September 2007, his shoe began to wear and fall apart.  Plaintiff claims that he told, "the medical department" that he needed a new shoe and asked to "see orthopedics".   On October 19, 2007, plaintiff was seen by orthotics at Upstate and measured for a boot with a lift.[4]  Plaintiff received his replacement shoe six months after he was measured.

While waiting for his replacement shoe, plaintiff wrote "a couple of letters" to Wright about the shoe, the pain he was having and the denial of his requests to see an orthopedic specialist.  DOCCS Regional Healthcare Director, Pedro Diaz, wrote to plaintiff and informed plaintiff that his medical needs were being addressed by the medical staff.[5]

While at Upstate, plaintiff claims that x-rays were taken of his knee and hip "three or four times".[6]  According to defendants, the x-rays were reviewed by a radiologist outside the facility.  Plaintiff was informed that his condition was degenerative and was told that if he wanted Tylenol 3, he would need to sign in with the medical infirmary as a patient.  Weissman suggested to plaintiff, via letter, that if he wanted Tylenol 3 pain medication, he should check into the infirmary, otherwise, he could have over-the-counter pain medication.  As a patient in the

---

[3] NSAID is an abbreviation for nonsteroidal anti inflammatory drugs.  *See* http://www.medilexicon.com (last visited January 18, 2012).

[4] Plaintiff testified that in October, he was examined by "orthotics" to determine the size and fit of the shoe.  Plaintiff's medical records are annexed as Exhibit "A" to the affidavit of Evelyn Weissman, M.D. in support of the motion for summary judgment.  Dr. Weissman avers that the documents are "complete and accurate" copies of plaintiff's medical records. Dr. Weissman did not treat plaintiff.  Therefore, the records contain hearsay and are not in admissible form.  However, to the extent that plaintiff does not dispute the accuracy, the records will be considered for the purposes of this motion.

[5] Plaintiff alleges that Wright never wrote to him.

[6] According to the record, the x-rays were taken in April 2008.

infirmary, plaintiff understood that he, "would have to be there twenty-four hours a day not doing anything". Plaintiff did not want to be inactive and thus, "never thought about checking into the infirmary". Plaintiff wrote to Weissman and told her that he would not be going to the infirmary, "because for me it would have been very boring and the time would be really, really slow". Plaintiff also refused the over-the-counter medication claiming, "those types of medication wasn't [sic] doing me any good because I had been taking them for years already and I guess my body built up some sort of tolerance and it just didn't work anymore". Plaintiff wrote to Weissman on two other occasions requesting an orthopedic evaluation and received one response denying his request. [7]

On February 29, 2008, plaintiff received a new shoe from DOCCS which fit but did not relieve the pain.[8] In December 2008, plaintiff went to sick call and received a prescription for Ultram.

On or about January 20, 2009, at plaintiff's request, he was transferred to Mid-Orange. Plaintiff's medical reports and prescription forms traveled with him to Mid-Orange however, his actual medication (Ultram) did not. In February and March, x-rays were taken of plaintiff's left knee and left hip. In March 2009, plaintiff met with Dr. Goulding and discussed his medication. Plaintiff claimed that Dr. Goulding wanted to change his prescription medication and that plaintiff refused because his medication was working fine. Dr. Goulding asserts that plaintiff asked him to alter his Ultram prescription from a two times daily dose to once a day because plaintiff claimed he was in pain and did not want to walk to the dispensing window twice a day. Dr. Goulding offered plaintiff a different medication which plaintiff refused. Plaintiff also refused to sign a

---

[7] Plaintiff does not have copies of the letters to Dr. Weissman.

[8] Defendants claim that plaintiff received a pair of orthotic shoes.

"refusal form". Later in March 2009, plaintiff met with another doctor at Mid-Orange who prescribed Ultram. On June 29, 2009, Dr. Goulding referred plaintiff to a physiatrist at Green Haven Correctional Facility for plaintiff's continued complaints of leg pain. Approximately one month later, plaintiff took a day trip to Green Haven for the consultation.[9]

On or around September 14, 2009, plaintiff was transferred to Fishkill Correctional Facility. Plaintiff took his prescription for Ultram to Fishkill. On or around October 8, 2009, plaintiff arrived at Lakeview. On intake, plaintiff's Ultram was discontinued and he was offered Ibuprofen, Voltaren and/or Percogesic[10], which he eventually took, after initially refusing the medication.

On or around December 14, 2009, plaintiff was transferred to Orleans. A few days after intake, plaintiff was examined by Dr. Douglas and offered Naprosyn for his pain.[11] In January 2010, Dr. Douglas referred plaintiff to Wende Correctional Facility for an MRI. On February 25, 2010, plaintiff returned to Wende for an orthopedic examination with Dr. G. Coniglio.[12] On June 2, 2010, plaintiff underwent surgery at Wyoming Correctional Facility.[13]

On March 16, 2010, plaintiff commenced the within action. In the complaint, plaintiff asserts, *inter alia*, the following:

---

[9] The medical record contains no information regarding this visit and does not include the name of the physiatrist. Plaintiff alleges that the doctor was "rude and hostile" and that he was asked to leave. Goulding provided an affidavit which states only, "I referred [plaintiff] to a physiatrist located at Green Haven Correctional Facility".

[10] Voltaren is a nonsteroidal anti inflammatory (NSAID). *See* http://www.drugs.com (last visited January 18, 2012). Percogesic is acetaminophen. *See* http://www.webmd.com (last visited January 18, 2012).

[11] Naprosyn is an anti-inflammatory used in the treatment of pain and inflammation. *Dorland's Illustrated Medical Dictionary,* 1251 (31st Ed. 2007).

[12] The record does not contain the doctor's full name

[13] The surgical records are not part of the record herein.

While at Lakeview, I constantly complaint of pain in my hip and knee. I wrote to facility Dr. requesting orthopedic visit and evaluation. My request went unanswered.

I arrived at Mid-Orange 1.20.09 . . . I constantly complained of pain in my left hip and knee. I requested on numerous occasions to see an orthopedic surgeon, the facility health care provider Dr. Goulding, constantly told me "no".

I went to Green Haven to see podiatrist 7.22.09 he told me again no orthopedic visit was necessary. He recommended that I be prescribed pain medication which I never received.

5.1.09 again complained of constant pain and need to see orthopedic request denied.

X-rays 4.13.09 dr. told me arthritis was causing me the pain, I didn't agree with assessment one bit.

On 3.18.09 requested once again to see orthopedic, request denied again.

Arrived at Upstate Corr. Fac. 8.15.07 remained there until 1.16.09 while I constantly complained of severe pain in my left hip and knee. Filed numerous grievances there regarding need to see orthopedic doctor and be issued pain medication, my requests to see orthopedic were met with denials, for whatever reasons.

If I had been able to see an orthopedic doctor from the outset, the damage, pain and suffering would have been minimized considerably. I believe hip replacement wouldn't be necessary and I wouldn't have been in constant pain for as long as I've been.

With regard to "causes of action", plaintiff alleges:

I requested to see orthopedic numerous times at Upstate Corr Fac. Health care provider didn't never [sic] initiated the proper actions to make that possible. I constantly complained of pain and the need for medication and orthopedic treatment.

I requested to see orthopedic doctor while at Mid-Orange Corr. Fac. Dr. Goulding constantly denied this opportunity and he changed the medication prescribed at Upstate Correctional Facility which worked just fine.

> I consistently wrote to Dr. Wright in Albany asking for his assistance getting to the orthopedic doctor. It appears he didn't intervene to assist me in getting the orthopedic appointment, at any stage of my complaints.

Defendants move for summary judgment and dismissal of plaintiff's complaint arguing: (1) defendants are entitled to Eleventh Amendment immunity in their official capacities; (2) plaintiff's Eighth Amendment claims of deliberate indifference "must fail"; (3) Wright is not liable for failure to intervene; (4) Wright was not personally involved; and (5) defendants are entitled to qualified immunity. (Dkt. No. 39). Plaintiff has opposed the motion. (Dkt. No. 42).

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 ( c ). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). It is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex,* 477 U.S. at 324 (quoting Fed. R. Civ. P. 56( c )(e)).

"Defendants can meet their burden of establishing their entitlement to summary judgment by relying on plaintiff's medical records to establish the absence of any evidence supporting deliberate indifference to his mental health needs." *Guarneri v. Hazzard*, 2010 WL 1064330, at *8 (N.D.N.Y. 2010) (citing *Mills v. Luplow*, 2009 WL 2579195, at *8 (W.D.N.Y. 2009)). "Though conventional wisdom might dictate the submission of affidavits from the primary actors ... [the] defendants' decision to rely instead upon the lack of evidentiary support for plaintiff's claims, is sufficient to cast the burden upon the plaintiff to come forward with evidence demonstrating the existence of genuinely disputed material issues of fact for trial with regard to those claims." *Id*.

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp*., 43 F.3d 29, 36 (2d Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986)) (other citations omitted). Where a plaintiff has failed to properly respond to a defendant's Statement of Material Facts ("Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) (holding that the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement and must be satisfied that the movant's assertions are supported by the evidence in the record).

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (other citations omitted)). The Second Circuit has opined that the court is obligated to "make reasonable

allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F.Supp.2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *Id.* at 295 (citing *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F.Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## II.    Eleventh Amendment

Plaintiff has sued defendants in their official and individual capacities. Defendants argue that plaintiff's claims against defendants in their official capacities should be dismissed. The Court agrees.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although by its terms, the amendment bars suit by citizens of one State against another State, the Supreme Court has held that the amendment similarly bars suits against a State by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.' " *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the State, including a state agency in federal court. *See Pennhurst State School & Hosp.*, 465 U.S. at

98; *see also Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir.1993). To the extent that a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs*. 915 F.Supp. 525, 539 (N.D.N.Y.1995) (citing, *inter alia, Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.), *cert. denied*, 510 U.S. 1073 (1994)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir.1997) (holding that "[a] claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer").  All DOCS employees are state officials for the purposes of the Eleventh Amendment.  *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002)

Accordingly, plaintiff's claims against defendants in their official capacities are dismissed as barred by the Eleventh Amendment.

## III.    Eighth Amendment

Defendants move for summary judgment and dismissal of plaintiff's Eighth Amendment deliberate indifference claims arguing: (1) plaintiff was provided adequate medical care; (2) plaintiff's personal disagreement with treatment is irrelevant; and (3) plaintiff engaged in a pattern of refusing treatment.  Plaintiff contends that his treatment was "not adequate" and further, that he refused certain treatment to avoid further pain and suffering.

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In order to establish a claim for

unconstitutional denial of medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Hathaway*, 37 F.3d at 66 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This standard requires proof of both an objective and subjective element.

First, the prisoner must demonstrate that his alleged deprivation was of a "sufficiently serious" nature. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This can be shown by proving "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990). Courts have also considered factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998)).

Second, a prisoner must show that "the prison official knew of and disregarded his serious medical needs." *Chance*, 143 F.3d at 702 (2d Cir.1998) (citing *Farmer*, 511 U.S. at 837). It is not enough to merely disagree over the proper course of treatment. *See id.* at 703. Rather, a prisoner must demonstrate that the prison official acted intentionally, for example, by "intentionally denying or delaying access to medical care or intentionally interfering with ... treatment." *Estelle*, 429 U.S. at 97. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106; *see also Palacio v. Ocasio*, 2006 WL 2372250, at *11 (S.D.N.Y. 2006) (the failure to diagnose a jaw fracture did not support a claim under 42 U.S.C. § 1983).

A delay in providing necessary medical care may in some cases constitute deliberate indifference in cases where, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or

delayed major surgery for over two years. *Demata v. New York State Corr. Dep't of Health Srvcs.,* 1999 WL 753142, at *2 (2d Cir. 1999) (internal citations and citations omitted). An allegation that "[a] delay of over two years in arranging surgery to correct the broken pins in [the plaintiff's] hip amounted to deliberate indifference to his serious medical needs" sufficient to survive a motion for summary judgment. *Hathaway*, 841 F.2d at 50 -51.

Here, defendants argue, even assuming plaintiff's degenerative arthritic condition constitutes a serious medical need, plaintiff cannot establish the subjective element.[14]  To wit, defendants argue that plaintiff was frequently examined, routinely monitored, provided with pain medication, evaluated by an expert, x-rayed on multiple occasions and ultimately provided with surgery.  Moreover, defendants claim that plaintiff refusal to transfer to the infirmary to take Tylenol 3 warrants summary judgment.

In support of the motion, defendants provided affidavits from Weissman and Goulding. Weissman avers that plaintiff was seen by the medical staff at Upstate no less than 15 times and received pain medication for his leg and custom orthotics.  Weissman asserts that plaintiff was not permitted to see an orthopedic surgeon while at Upstate due to the results of his x-rays:

> In order for plaintiff to have been referred to a specialist as requested, there would have to have been some documented abnormality found by an x-ray that would be consistent with such a request.  Without a perceived need as evidenced by an x-ray, there was simply no basis to refer plaintiff to see a specialist.

Weissman asserts that the x-rays were reviewed by a radiologist outside the facility and in each case, the results were negative.  Goulding asserts that he examined plaintiff no less than six times and that plaintiff received medication for his leg and was referred to a physiatrist outside of

---

[14] The parties do not present any arguments regarding the objective element of plaintiff's claim. Accordingly, the Court does not hold, as a matter of law, that plaintiff suffered from a serious medical need.  The Court only assumes this element has been met, for the purposes of the motion.

Mid-Orange.  With regard to the dispute involving Ultram, Goulding asserts that plaintiff was receiving a two times daily dose and asked Goulding to change the medication to a one time dose so that he did not need to walk to the dispensing window twice a day.  In response, Goulding asserts that he offered a different medication that did not need to be dispensed from the window, and plaintiff refused.

The medical record reveals that defendants were aware of plaintiff's serious condition. From the time plaintiff was received at Downstate in July 2007 until February 2010, plaintiff continually complained of pain in his left leg.  *See Price v. Reilly*, 697 F.Supp.2d 344, 363 (E.D.N.Y. 2010) (based upon the plaintiff's documented complaints, it is uncontroverted that the defendants were aware of the plaintiff's pain).  Defendants do not deny that they were aware of plaintiff's complaints however, they claim that plaintiff cannot establish deliberate indifference because plaintiff was continually provided with and/or offered pain medication.  The Court is aware that disagreements over the course of treatment, including the type of medication prescribed, do not amount to deliberate indifference, *see Estelle*, 429 U.S. at 106-06, however, additional evidence in this matter supports the conclusion that a rational jury could find that defendants acted with deliberate indifference regarding plaintiff's condition.

The record establishes that plaintiff's prescription medication was repeatedly altered and/or discontinued.  It is undisputed that plaintiff was taking Tylenol 3 when he left Downstate but upon arrival at Upstate, that prescription was discontinued.  Weissman states, in a conclusory manner, that she offered Tylenol 3 to plaintiff but that in order to receive the medication, plaintiff had to check into the infirmary.  Weissman opines, "[i]f plaintiff was in pain, he should have checked into the infirmary and accepted the proposed prescription for Tylenol 3".  Weissman's assertions are unsupported by the documented record.  While at Downstate, plaintiff was not

confined to the infirmary or subject to any other restrictions in order to receive that medication.

However, upon his arrival at Upstate, the prescription was discontinued and offered only with

restrictions. Weissman does not explain why those restrictions were imposed. The Court has

thoroughly reviewed plaintiff's Ambulatory Health Records from Upstate. The dispute regarding

the prescription for Tylenol 3 is not documented anywhere in the medical record. Indeed, the

treatment records lack any entries from Weissman regarding the issues with plaintiff's

medication. While Weissman admits to corresponding with plaintiff about the issue, those letters

are not part of the record on the motion. During his deposition, plaintiff explained why he would

not check into the infirmary:

> I have a daughter that's twenty years old now, but at that time she was
> sixteen or seventeen, and I'll work in any program to have a little
> money so that I could at least send her a couple dollars when I could.
> That's one of the reasons I was in program. If you don't program,
> your pay is idle pay and that's only fifty cents a day. So, every week
> that's $5.00 and that wouldn't be enough to do anything with.

Based upon the conclusory assertions and conflicting evidence, plaintiff's refusal to take

Tylenol 3 does not warrant an award of summary judgment in favor of defendants on the

deliberate indifference issue. Further, there are additional issues of fact regarding plaintiff's

medications. While at Upstate (in December 2008), plaintiff received a prescription for Ultram.

Upon his transfer to Mid-Orange, that medication was discontinued. Goulding offers conclusory

assertions regarding plaintiff's medication claiming that he offered plaintiff different medication,

rather than Ultram once a day, but does not identify the different medication or explain why that

change was necessary. After plaintiff left Mid-Orange, his prescription was again changed and he

was offered at least three different NSAIDS without explanation. When he arrived at Orleans,

the medical staff offered plaintiff Naprosyn.

14

For three years, defendants were aware of plaintiff's pain and repeatedly discontinued or altered his medication, while plaintiff continued to complain of pain. The constant changes in medication and refusal to provide certain types of medication, without more, do not amount to deliberate indifference.  However, in this case, the reasons for the continual changes or denials in medication are not well documented or explained in the record.  "If these changes or denials are not proven and not satisfactorily explained, they may support a finding of deliberate indifference on the part of defendants".  *See Davidson v. Scully*, 1994 WL 669549, at *17 (S.D.N.Y. 1994) (the reasons for the alleged delays and denials of the plaintiff's medical care remain largely unclear and disputed) (citing *Hathaway*, 841 F.2d at 50-51) ("[a] jury could infer deliberate indifference from the fact that [the defendant] knew the extent of [the plaintiff's] pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve [the plaintiff's situation").

In addition to the dispute regarding medication, plaintiff also claims that for three years, his requests to meet with an orthopedic specialist were denied.[15]  Defendants explain that they declined to refer plaintiff to a specialist because all x-rays were negative.  "The fact that defendants may have based their refusal to send plaintiff to a specialist based upon prison policy does not negate a finding of deliberate indifference."  *Hardy v. City of New York*, 732 F.Supp.2d 112, 132 (E.D.N.Y. 2010).  "To that end, a jury must examine whether the application of the policy in plaintiff's case could have amounted to deliberate indifference to plaintiff's medical needs."  *Id.* (citing *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005)).  In this matter, the report from Dr. Coniglio creates a genuine issue of fact regarding the application of that policy.

---

[15]  The record indicates that plaintiff was seen by a physiatrist in July 2009.  However, there is no affidavit from that physiatrist and no records of his treatment in the record.  Plaintiff testified that the visit was nothing more than cursory.

In February 2010, plaintiff was referred to Dr. Coniglio for an orthopedic consultation.  Upon examination, Dr. Coniglio noted that plaintiff was in "extreme pain" and concluded that, "the left leg is shortened 3-4 cm. anyway, probably 2 inches".  Dr. Coniglio diagnosed plaintiff with, "broken rod nonunion, subtrochanteric fracture and severe osteoarthritis of the left hip".  Most relevant to the issues herein is Dr. Coniglio's observation that, "[i]ncidentally, the femoral rod is almost ready to poke through the left knee".  The doctor concluded:

> The hardware needs to be removed.  We need to order special gadgets to get the hardware and cross piece out.  He will need a total hip arthoplasty.  We may need to do a calcar replacement.  We will try to get this done ASAP.  He will need crutches or even a walker until then.  It may need to be a two stage procedure if we have problems getting the hardware out.

The record does not contain any affidavit from Dr. Coniglio or any other report or record regarding follow up examinations or surgery.  Based upon the record as it presently exists, a sense of urgency is inferred from Dr. Coniglio's observations, diagnosis and plan of treatment sufficient to permit a jury to conclude that defendants deliberately disregarded plaintiff's serious medical condition and created a substantial risk of serious harm.  There is enough evidence to create an issue of fact as to whether defendants continual refusal to refer plaintiff to an orthopedic specialist caused plaintiff to suffer additional, avoidable pain.  "While medical malpractice is not equivalent to deliberate indifference, consciously disregarding an inmate's legitimate medical needs amounts to culpable behavior".  *Hardy v. City of New York*, 732 F.Supp.2d 112, 132 (E.D.N.Y. 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000)).  In this case, based upon the medical records, a jury may conclude that Weissman's assertions regarding the need for a "documented abnormality" before plaintiff could be referred to a specialist, amounted to deliberate indifference.

While the record supports defendants' claims that plaintiff received medical attention for his complaints of pain, including medication and multiple x-rays, plaintiff has alleged facts that could potentially show, upon further development, that defendants had a sufficiently culpable state of mind. Viewing the facts in a light most favorable to the *pro se* plaintiff, the Court finds that evidence in the record may support plaintiff's claims that defendants knew of and disregarded plaintiff's condition causing a substantial risk of harm. *See Hemmings v. Gorczyk,* 134 F.3d 104, 108 -109 (2d Cir. 1998) ("[w]hile we agree that the fact that [the plaintiff] received some medical attention, including two x-rays, substantially weakens his claim of deliberate indifference, we are not prepared to say that his claim is so completely devoid of merit as to justify dismissal at this early stage"). Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's Eighth Amendment claims is denied.

## IV.    Wright's Personal Involvement

Defendant Wright argues that he was not personally involved with plaintiff's medical care and thus, should be awarded summary judgment. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir.2010). Supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Letters to a supervisor, even if the supervisor

responds, do not demonstrate the requisite personal involvement. *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

Here, plaintiff claims that he "constantly wrote to Dr. Wright asking for his assistance getting to the orthopedic doctor". Plaintiff alleges that Wright "failed to intervene". In his deposition, plaintiff testified that he wrote to Dr. Wright with his complaints while he was confined to Upstate. Plaintiff admits that DOCCS Regional Healthcare Director, Pedro Diaz, wrote in response. Even viewing the evidence in a light most favorable to plaintiff, the allegations against Wright must be dismissed. The indisputable evidence establishes that Wright did not provide plaintiff with any medical treatment nor did he make any medical decisions regarding plaintiff's treatment. At best, the evidence demonstrates that plaintiff complained to Wright and that Diaz responded to plaintiff in lieu of a response from Wright. This evidence is insufficient to establish personal involvement in the alleged constitutional deprivation. "The failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement." *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. 2010) (citation omitted) (the fact that the defendant, Wright, or one of his staff, responded to the plaintiff's letters is not sufficient to confer personal responsibility); *see also Gonzalez v. Sarreck*, 2011 WL 5051341, at *15 (S.D.N.Y. 2011) (the defendant, Wright, was not personally involved when he delegated the handling of the plaintiff's complaints to a subordinate). Even if Wright, as plaintiff suggests, ignored his complaints, that is insufficient to establish personal involvement. *Tafari v. Stein*, 2009 WL 331378, at *10 (W.D.N.Y. 2009); *see also Wright v. Genovese*, 694 F.Supp.2d 137, 161, n. 16 (N.D.N.Y. 2010) (even if the defendant ignored plaintiff's complaints, that does not make him liable under Section 1983). Thus,

defendant Wright's motion for summary judgment and dismissal of plaintiff's complaint based upon a lack of personal involvement is granted.

**V.      Qualified Immunity**

In the alternative, defendants Weissman and Goulding claim that they are entitled to qualified immunity.  "[P]ublic officials ... are protected by qualified immunity from civil liability for actions taken in their official capacity, if those actions were objectively reasonable in light of clearly established rules then extant." *Pabon v. Wright*,  459 F.3d 241, 255 (2d Cir. 2006) (citing *Morris-Hayes v. Bd. of Educ.*, 423 F.3d 153, 158 (2d Cir. 2005)). In determining qualified immunity, the Court must examine two factors.  First,  whether, when viewed in the light most favorable to the plaintiff, "the facts alleged show the [official's] conduct violated a constitutional right."  *Id*. at 248.  "If the plaintiff establishes that the violation of a constitutional right occurred, the court can examine whether the right was clearly established ... in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009).

In this case, the Court has determined that there are issues of fact regarding plaintiff's alleged constitutional violation.  Moreover, it is well settled that at the time of the alleged occurrences, the Eighth Amendment required that inmates should be free from cruel and unusual punishment.  Thus, accepting plaintiff's allegations as true, the issue of qualified immunity must be determined by the factfinder.  *See Wilson v. King*, 2010 WL 3724128, at *11 (N.D.N.Y. 2010). Qualified immunity cannot be granted to defendants since a reasonable person in their position at the time would or should have known that deliberate indifference to serious medical needs was a constitutional violation.  *Chaney v. Koupash*, 2008 WL 5423419, at *22 (N.D.N.Y. 2008).  Based

upon the record as it presently exists and the aforementioned analysis, defendants' motion for summary judgment based upon qualified immunity is denied.

## CONCLUSION

**It is hereby**

**ORDERED**, that defendants motion for summary judgment and dismissal (Dkt. No. 39) of plaintiff's claims against defendants in their official capacities, based upon the Eleventh Amendment, is **GRANTED**; it is further

**ORDERED,** that defendants' motion for summary judgment and dismissal (Dkt. No. 39) of plaintiff's Eighth Amendment deliberate indifference claims is **DENIED**; it is further

**ORDERED**, that defendant Wright's motion for summary judgment and dismissal (Dkt. No. 39) of plaintiff's claims based upon Wright's lack of personal involvement is **GRANTED**; it is further

**ORDERED**, that defendants Weissman and Goulding motion for summary judgment and dismissal of (Dkt. No. 39) plaintiff's claims based upon qualified immunity is **DENIED**; it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties by regular or electronic mail, and it is further;

**ORDERED** that pursuant to Local Rule 72.3, the parties are advised that the referral of this matter to the Magistrate Judge was RESCINDED, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit.

**IT IS SO ORDERED.**

Dated:  January 24, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge